**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

---

CHARLES AUGUSTUS, JR.,

      Plaintiff,

      v.

GRACE OMACHI, CHRISTOPHER
GONZALEZ, and CITY OF CHICAGO

      Defendants.

Case No. 26-cv-7819

*Jury trial demanded.*

---

**COMPLAINT AT LAW**

---

NOW COMES Plaintiff, CHARLES AUGUSTUS, JR., by his attorney, LAW OFFICE OF JORDAN MARSH LLC, and complaining of the defendants GRACE OMACHI, CHRISTOPHER GONZALEZ, and CITY OF CHICAGO, and states the following:

**<u>JURISDICTION AND VENUE</u>**

1. This action arises under the Constitution of the United States, particularly the Fourth Amendment to the Constitution of the United States, under the laws of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988, and under the laws of the State of Illinois.

2. The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, 1331 and 1343. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to Title 28 of the United States Code, Section 1367.

3. This Court has jurisdiction over this action pursuant to Title 28 of the United States Code §§ 1331 and 1367, as Plaintiff asserts claims under federal law and the state law claims arise out of the same facts as the Federal claims. Venue is proper under Title 28 of the United States Code, § 1391(b)(2), as the events complained of occurred within this district.

## PARTIES

4. At all times relevant herein, Plaintiff CHARLES AUGUSTUS, JR. ("Charles") was a resident of the County of Cook, State of Illinois.

5. Defendants GRACE OMACHI and CHRISTOPHER GONZALEZ, are sued in their individual capacities and were at all times relevant, sworn police officers employed by Defendant CITY OF CHICAGO, and were acting within the scope of their agency, service and/or employment with the CITY OF CHICAGO, and were acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois.

6. Defendant, CITY OF CHICAGO is a government entity operating within the State of Illinois. The CITY OF CHICAGO is responsible for the actions of its employees while acting within the scope of their employment. At all times relevant to this action, CITY OF CHICAGO was the employer of Defendants OMACHI and GONZALEZ.

## FACTUAL ALLEGATIONS

7. At approximately 5:20 PM on November 9, 2024, Charles was walking towards his grandmother's home while on a phone call.

8. At approximately 5:26 PM Chicago Police Officers Grace Omachi (Star #10629) and Christopher Gonzalez (Star #18195) were patrolling in a marked squad car in the area of

Central Park Avenue and Ohio Street in Chicago, Illinois. Officer Omachi stopped the car in the middle of an active traffic lane, obstructing a marked pedestrian crosswalk at that intersection.

9. After approximately 17 seconds, Defendant Omachi exited the vehicle — without activating her overhead oscillating lights — and approached Charles, who was lawfully crossing the street in a northbound direction within the marked pedestrian crosswalk.

10. Charles is a tall black man with a dark beard, standing approximately 6 feet 4 inches tall. At the time of the encounter, he was carrying a cardboard container of french fries in his right hand and holding a cell phone to the left side of his face with his left hand. He was dressed in a tan zip-up hoodie, light-wash distressed blue jeans, and black sneakers. His pants pockets were visibly empty, with nothing protruding from them.

11. Without providing any reason for the contact, Defendant Omachi asked Charles, "What is your name? Do you have anything on you?" Before Charles could respond, Defendant Omachi closed the distance between them, and — while still holding her squad car keys — reached out and seized his left hoodie pocket with her right hand.

12. She then used both hands to grab and lift his hoodie, exposing his waistband. His waistband was empty. Defendant Omachi proceeded to pull the hoodie sharply to her left, pressing it tightly against his back and the left side of his body. The fabric revealed no bulge or imprint of any object beneath it.

13. Defendant Gonzalez joined the encounter and also took hold of Charles' hoodie. From his position, Defendant Gonzalez had an unobstructed view of the back of Charles' waistband, where no bulge or imprint of any weapon was visible.

14. As Defendant Omachi continued to manipulate the hoodie, a red wrapper became visible inside Charles' right hoodie pocket. Defendant Omachi reached in, removed the wrapper, inspected both sides of it, and returned it to the pocket.

15. Charles objected to the officers' conduct throughout the encounter. When he demanded to know why he was being held, Defendant Omachi replied, "Do you understand you match the description?" This was the first time any description had been mentioned during the stop.

16. Charles asked the officers how he matched any description; neither officer provided an answer. The officers then asked whether he was carrying a gun. Charles told them he was not.

17. Having found no weapon on Charles, the officers nonetheless maintained their physical hold on him.

18. More than 30 seconds into the stop, Defendant Gonzalez informed Charles that he was being detained based on a call reporting a person with a gun, and that the suspect had been described as wearing a white hoodie. Charles pointed out to the officers that his hoodie was tan, not white.

19. The officers' basis for approaching Charles was a tip from an anonymous caller reporting a person armed with a gun on the 600 block of North St. Louis Avenue, several blocks from where the stop occurred. According to the tip, the suspect was the caller's boyfriend — described only as a black man wearing a white hoodie — who had left the area heading northbound in a 2013 Ford Edge with two children in the car. The caller offered no description of the suspect's pants, footwear, facial features, hairstyle, facial hair, height, weight, or build. Notably, despite

claiming an intimate relationship with the suspect, the caller failed to provide his name, date of birth, home address, or any other identifying information.

20. At the time of the stop, Charles was traveling on foot — with no association to any vehicle — in a location south and west of the 600 block of North St. Louis Avenue, heading in the opposite direction from that described by the caller.

21. Charles' hoodie was tan, not white.

22. Charles exhibited no furtive movements, kept both hands in plain view, and displayed no bulge or other indication of a concealed weapon anywhere on his person.

23. At no point did the officers arrange a show-up, a lineup, or a photo array to have the caller attempt to identify Charles, either before or after his arrest.

24. At no point during this encounter did any warrant exist authorizing the arrest or search of Charles.

25. Defendants Omachi and Gonzalez resorted to force to place Charles under arrest.

26. Charles was charged with two counts of resisting or obstructing a police officer in alleged violation of 720 ILCS 5/31-1(a).

27. The charges were stricken with leave to reinstate on April 24, 2025, on information and belief after video review.

28. As a result of the foregoing, Charles was deprived of rights secured by the Fourth Amendment to the United States Constitution, as well as Illinois law.

**<u>PRAYER FOR RELIEF</u>**

5

For the foregoing reasons, the Plaintiff CHARLES AUGUSTUS, JR., prays for judgment against  in a fair and reasonable amount, including compensatory and punitive damages, attorney fees and costs, pre-judgment interest, and for any additional relief this Court deems just and proper.

## JURY DEMAND

The Plaintiff CHARLES AUGUSTUS, JR., requests a trial by jury.

**DATED:** July 3, 2026

Respectfully submitted,

CHARLES AUGUSTUS, JR.

/s/ Jordan Marsh
*Attorney for the Plaintiff*

**LAW OFFICE OF JORDAN MARSH LLC**
33 North LaSalle Street Suite 2000
Chicago, IL 60602
(224) 220-9000
jordan@jmarshlaw.com